IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES ALBERT McCALL, III and YAASEEN NIXON,<br>        *Plaintiffs,*<br>    v.<br>CITY OF PHILADELPHIA, *et al.*,<br>        *Defendants.* | CIVIL ACTION NO. 18-4622 |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                                                                                                        **August 30, 2019**

      Plaintiffs James Albert McCall, III and Yaaseen Nixon, by and through counsel, filed suit against the City of Philadelphia ("the City") and Philadelphia Police Department Officers Deayoung Park, Matthew Farley, Bruce Wright and Timothy Dougherty ("Police Officers"), asserting violations of their Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, and numerous state tort laws. Plaintiffs also brought the same state tort law claims against Good Luck Chinese Restaurant, Ling Lin, and Zhou Zhao ("Restaurant Defendants"). Defendants have filed motions to dismiss Plaintiff's Complaint. Upon consideration of the motions and responses thereto, Defendants' motions will be granted in part and denied in part.

    **I.    BACKGROUND[1]**

      Plaintiff McCall entered the Good Luck Chinese Restaurant on the evening of September 3, 2016, and purchased a fruit salad from employee Ling Lin. Later that evening he returned to request a refund or exchange because he believed the fruit was not fresh. A verbal disagreement allegedly ensued between McCall and Lin, during which Lin threw money at McCall, and

---

[1] The following facts, unless otherwise noted, are taken from the Complaint and assumed to be true for purposes of the motions.

McCall overturned a trash can inside the store before leaving. As McCall walked home, Lin allegedly threw a glass bottle at him and continued to follow him.

McCall reached the front steps of his home, just as Lin allegedly told him that he was "going to jail." McCall's wife came outside, and Lin allegedly spit in her face. Lin's husband, who appears to be fellow employee Zhou Zhao, also was present and allegedly approached McCall. McCall's step-son, Plaintiff Yaaseen Nixon, came out of the house, saw Zhao approach his step-father, and allegedly pushed Zhao away to prevent any harm. McCall, his wife, and Nixon then entered their home to avoid any further discord. Lin allegedly reported the incident to Police Officer Wright that night, and no charges were pursued based on that complaint.

On October 25, 2016, almost two months later, Lin and Zhao allegedly appeared at the Philadelphia Police Department and were interviewed by Officer Park about the September 3 incident; the Complaint does not allege who initiated the interview. Lin told Park that McCall's wife pointed a shotgun at her during the disagreement and that Nixon punched Zhao, facts which were not mentioned in the initial September 3 complaint. Despite having access to the initial complaint, Officer Park proceeded to draft an affidavit of probable cause, presumably related to the search of Plaintiffs' home, which was approved by the Philadelphia District Attorney's Office that same day.

On October 26, 2016, the City's Police Department, by and through its officers and employees, conducted a search of Plaintiffs' home, which allegedly yielded no evidence of a crime. Approximately two days later, the Defendant Police Officers arrested both McCall and Nixon, and charged them with criminal conspiracy, aggravated assault, possession of an instrument of a crime, terroristic threats, simple assault, and recklessly endangering another person and carrying firearms in public. On July 5, 2017, Plaintiffs appeared in the Philadelphia

Common Pleas court, and the criminal charges were withdrawn. Plaintiffs McCall and Nixon allege that they were subjected to excessive force, unlawful arrest and search, and malicious prosecution.

**II.     LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to demonstrate that he is entitled to relief.[2] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[3] Courts are not, however, bound to accept as true legal conclusions framed as factual allegations.[4] Something more than a mere *possibility* of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[5] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[6] Deciding a motion to dismiss, courts may consider "only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."[7]

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[3] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[4] *Twombly*, 550 U.S. at 555, 564.

[5] *Id.* at 570.

[6] *Id.* at 562 (internal quotation marks and citations omitted).

[7] *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Brown v. Daniels,* 128 F. App'x 910, 913 (3d Cir. 2005) (quoting *Lum v. Bank of Am.,* 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

## III. DISCUSSION

### A. Federal Claims Pursuant to § 1983

Plaintiffs have brought federal claims under 42 U.S.C. § 1983 against the City and Police Officers based on violations of his Fourth and Fourteenth Amendment rights. Section 1983 is not a source of substantive rights, but a means of vindicating violations of federal constitutional and statutory rights committed by state actors.[8] To state such a claim, Plaintiffs therefore must allege (1) a deprivation under the Constitution or laws of the United States, (2) by a person acting under color of state law.[9]

As an initial matter, the City and Police Officers argue that Plaintiffs' reference to the Fourteenth Amendment in their Complaint is an attempt to bring additional substantive due process claims in this case, and therefore is barred by the "more specific provision" rule.[10] The Court construes the reference to the Fourteenth Amendment simply as incorporating Plaintiffs'

---

[8] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citation omitted).

[9] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

[10] In a § 1983 action, a party may raise three categories of due process claims under the Fourteenth Amendment: (1) claims incorporating "specific protections defined in the Bill of Rights"; (2) substantive due process claims "bar[ring] certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them"; and (3) procedural due process claims concerning the absence of procedural remedies where an individual is "depriv[ed] by state action of a constitutionally protected interest in life, liberty, or property." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal quotation marks and citations omitted). When a plaintiff alleges a constitutional claim exclusively under the Substantive Due Process Clause of the Fourteenth Amendment and not a more specific provision that applies to the claims, such as the Fourth Amendment, the Fourteenth Amendment does not apply under the "more specific provision" rule. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (internal quotation marks and citation omitted)); *see, e.g.*, *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that all claims of excessive force in connection with a Fourth Amendment seizure "should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach"); *Verdier v. Darby Borough*, 796 F. Supp. 2d 606, 619 (E.D. Pa. 2011) ("Because the Fourth Amendment governs Plaintiff's claims regarding search, seizure, and excessive use of force, the more generalized notion of substantive due process under the Fourteenth Amendment does not apply." (internal quotation marks and citation omitted)).

Fourth Amendment claims of unreasonable use of force, unlawful arrest and search, and malicious prosecution against the City and Police Officers as state actors.[11]

### 1. Claims Against Police Officers

Officer Park does not move to dismiss the unlawful arrest and malicious prosecution claims brought against him at this time, as he acknowledges that those claims "are at least conceivably related to Plaintiffs' factual allegations."[12] However, Officer Park does move to dismiss the claims of excessive force and unlawful search against him, and Officers Farley, Wright, and Dougherty move to dismiss all claims against them.[13] In a rather general manner, Police Officers argue that Plaintiffs did not plead any facts or allege any personal involvement giving rise to those contested claims.[14]

A defendant's personal involvement, personal knowledge of, or acquiescence in an alleged wrong is necessary to sustain a § 1983 claim.[15] Liability may not be predicated on the

---

[11] It may be considered appropriate for a plaintiff to reference the Fourteenth Amendment in conjunction with another provision to invoke the incorporation doctrine against state actors, however. *See Williams v. Papi*, 30 F. Supp. 3d 306, 311–312 (M.D. Pa. 2014) ("Because Plaintiff brought a claim under the Fourth Amendment for the actions of a police officer employed by a Pennsylvania municipality, she was not only not barred from invoking the Fourteenth Amendment, but was indeed *required* to allege it to make her claim cognizable." (citing *Palko v. Connecticut*, 302 U.S. 319, 324–25 (1937)).

Plaintiffs seem to highlight in their opposition brief that they are "referencing" the Fourteenth Amendment as a means of bringing Fourth Amendment claims against state actors, which implies an invocation of the incorporation doctrine. *See Terry v. Ohio*, 392 U.S. 1, 8 (1968) (citation omitted) (noting that the Fourth Amendment has been applied to the States through the Fourteenth Amendment). Plaintiffs' Complaint does include other language, such as allegations relating to "the right to be secure in ones' person and property and to due process of law." Compl. [Doc. No. 1] ¶ 53. To the extent that Plaintiffs may be raising independent substantive due process claims, the Court will not treat those allegations as actionable under the Fourteenth Amendment based on the "more specific provision" rule, and will construe such allegations only as supplemental to the incorporation of their Fourth Amendment rights.

[12] City and Police Officers' Mot. to Dismiss [Doc. No. 14] at 7 n.4. As Plaintiffs bring both state and federal claims of malicious prosecution and false or unlawful arrest, and because Officer Park does not appear to seek dismissal of either of those state or federal claims, it therefore may be properly assumed that there are federal claims which remain in this case.

[13] *Id.* at 7 n.5.

[14] *Id.* at 7-8.

[15] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

5

operation of *respondeat superior*, and such allegations must be made with appropriate particularity.[16] Here, Plaintiffs allege that "Defendant Officers arrested" Plaintiffs and brought various criminal charges against them "[w]ithout cause or justification," which were later withdrawn.[17] Given that the allegations were against all Police Officers, and not just Officer Park, Plaintiffs have properly pled enough factual allegations regarding the personal involvement of Officers Farley, Wright, and Dougherty in the alleged unlawful arrests and malicious prosecutions. Thus, Police Officers' motion to dismiss the unlawful arrest and malicious prosecution claims will be denied.[18]

Plaintiffs also have stated sufficient facts regarding Police Officers' personal involvement in the allegedly unlawful search to survive the motion to dismiss. Plaintiffs assert that although Officer Park had access to the initial September 3, 2016 complaint, which made no mention of a weapon being involved in the disagreement, he proceeded to draft an affidavit of probable cause related to Plaintiffs' home on October 25, 2016, which was approved by the Philadelphia District Attorney's Office that same day.[19] Plaintiffs further allege that "[o]n or about October 26, 2016, without cause or justification, the Defendant City of Philadelphia Police Department, by and through its officers and employees, conducted a search of Plaintiffs' home address . . . [which] yielded no evidence of a crime."[20] Such allegations have placed the Police Officers on notice of

---

[16] *Id.*

[17] Compl. [Doc. No. 1] ¶¶ 38, 40, 42, 43.

[18] Police Officers may reassert their arguments on a more fully developed record at summary judgment, if appropriate.

[19] Compl. [Doc. No. 1] ¶ 36.

[20] *Id.* ¶ 37.

6

the unlawful search claim against them by reference to them as employees of the Philadelphia Police Department, and their motion to dismiss also will be denied on this claim.[21]

The Court does, however, agree with Police Officers that Plaintiffs' excessive force claim lacks any factual specificity or personal involvement. Whether a police officer used excessive force in violation of a citizen's Fourth Amendment rights depends on whether the amount of force used was "objectively reasonable."[22] Determining objective reasonableness requires analyzing the "nature and quality of the intrusion on the individual's Fourth Amendment interests," which is balanced "against the countervailing governmental interests at stake."[23] Here, Plaintiffs do not assert any factual allegations as to how, or even if, any of the Police Officers imposed force upon them. Although the Third Circuit has held that the reasonableness of the use of force is normally a jury question, which may be appropriate at the summary judgment stage under some circumstances,[24] there must be some force alleged to survive a motion to dismiss. As Plaintiffs solely have alleged that they were subjected to "an unreasonable use of force,"[25] and nothing more, Plaintiffs therefore have failed to state a plausible claim for excessive force.

---

[21] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009). Although the allegations of the search occurred two days before the arrest, the Court may infer from the Complaint that the Police Officers also were alleged to have been involved in the search. The record needs to be further developed on both of these related issues.

[22] *Graham*, 490 U.S. at 397.

[23] *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

[24] *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004).

[25] Compl. [Doc. No. 1] ¶¶ 53, 63.

### 2. Claims Against the City[26]

The City moves to dismiss the § 1983 claims against it by arguing that Plaintiffs have pled only conclusory allegations regarding the elements of municipal liability.[27] The Court agrees.

Section 1983 liability against a municipal entity cannot be based on a theory of *respondeat superior* or vicarious liability.[28] Rather, "[a] local government may be sued under § 1983 only for acts implementing an official policy, practice or custom."[29] As recently reiterated by the Third Circuit, a plaintiff can hold a municipality, such as the City, liable for constitutional violations by alleging: (1) an unconstitutional policy or custom of the municipality leading to plaintiff's injuries; or (2) a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice."[30] A "policy" exists when a municipal decision-maker with final authority issues an official proclamation or edit, and a "custom" exists when "practices of state officials [are] so permanent and well settled as to virtually constitute law."[31] Furthermore, a deliberate or conscious failure or inadequacy by a municipality may apply to claims related to its failure to train, supervise, and discipline its police officers.[32]

---

[26] Generally, a municipality cannot be held liable under § 1983 for violating an individual's civil rights as a result of a municipal policy or practice unless one of the municipality's employees "is primarily liable under section 1983 itself." *Williams v. West Chester*, 891 F.2d 458, 467 (3d Cir. 1989). As federal claims against Police Officers remain, the Court must now determine whether the Plaintiffs have adequately pled municipal liability claims against the City.

[27] City and Police Officers' Mot. to Dismiss [Doc. No. 14] at 5-6.

[28] *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[29] *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3d Cir. 1984) (citing *Monell*, 436 U.S. at 690–91).

[30] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

[31] *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) ("A custom . . . must have the force of law by virtue of the persistent practices of [municipal] officials." (internal quotation marks and citation omitted)).

[32] *See, e.g., Estate of Roman*, 914 F.3d at 798–99 ("[Plaintiff] has not pled a municipal policy . . . [but] has . . . adequately pled that the City failed to train, supervise, and discipline its police officers.").

Plaintiffs do not assert any particular municipal policy that caused their alleged injuries,[33] but appear to allege that the City engaged in a "pattern, practice, and custom of subjecting citizens such as the [P]laintiffs to the use of force, arrest, search and prosecution in the absence of probable cause or other lawful grounds."[34] To the extent that Plaintiffs attempt to allege a custom, the allegations set forth in their Complaint are insufficient. Other than pleading facts that are specific to Plaintiffs, the inclusion of the conclusory terms "pattern, practice and custom" are simply threadbare recitations of the elements of their claims.[35] Conclusory and general claims that paraphrase § 1983 will not satisfy federal pleading requirements since they "fail[] to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability."[36]

Plaintiffs also allege a number of "failure to train" claims against the City.[37] The pleading requirements are different for such claims, which "are generally considered a subcategory of policy or practice liability."[38] For claims relating to police officers, the Supreme Court has held that in limited circumstances, the failure to train may serve as a basis for

---

[33] *See Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (holding that in order to state a municipal policy, a plaintiff must allege "an official proclamation, policy, or edict") (internal quotation marks omitted).

[34] Compl. [Doc. No. 1] ¶ 46.

[35] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)); *see also Cortese v. Sabatino*, No. 18-3804, 2019 WL 1227842, at *4 (E.D. Pa. Mar. 15, 2019) ("Plaintiff cannot extrapolate from an isolated occurrence with those Officers, without more, to allege that their conduct evidenced a larger policy or custom endorsed by the City . . . .").

[36] *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (quoting *McTernan v. City of York*, 564 F.3d 636, 658–59 (3d Cir. 2009)); *see also Groman*, 47 F.3d at 637 ("[T]his case standing alone does not provide sufficient proof of a policy or custom to satisfy the dictates of § 1983." (citing *Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985))).

[37] Compl. [Doc. No. 1] ¶¶ 55-58, 65-68. Although Plaintiffs have a number of allegations based on a failure to train, supervise, and discipline, the Third Circuit has recently stated that these types of allegations are analyzed together under the "failure to train" umbrella since "they fall under the same species of municipal liability." *Estate of Roman*, 914 F.3d at 799 n.7 (citation omitted).

[38] *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

municipal liability, but only where it "amount[s] to 'deliberate indifference to the rights of persons with whom the police come into contact.'"[39] Deliberate indifference is a "stringent standard" as to fault,[40] where identification of "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'" to demonstrate that policymakers had notice of the tortious conduct and therefore exhibited deliberate indifference by failing to act.[41]

Here, Plaintiffs allege that the City has "encouraged, tolerated, ratified and has been deliberately indifferent . . . to the need for more or different training, supervision, investigation or discipline" regarding issues such as "unlawful arrests and malicious prosecutions by police officers," "the proper exercise of police powers," and "police officers' use of their status as police officers to employ the use of unlawful arrest, or to achieve ends not reasonably related to their police duties."[42] Additionally, Plaintiffs allege a multitude of issues with the City's Internal Affairs Division of the Philadelphia Police Department in failing to "provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions."[43]

These are general allegations and Plaintiffs fail to provide any specific factual support for their numerous assertions that the City failed to train, supervise, and discipline its employees.[44]

---

[39] *Estate of Roman*, 914 F.3d at 798 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

[40] *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 410 (1997).

[41] *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). An alternative to identifying a pattern of similar constitutional violations exists when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can be reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. The theory is called "single-incident" liability, and only applies to instances such as where a city deployed untrained police officers with firearms to capture fleeing felons without training them on the use of deadly force. *Connick*, 563 U.S. at 63. Plaintiffs do not appear to be alleging in the Complaint that this theory applies to their case.

[42] Compl. [Doc. No. 1] ¶¶ 55, 65.

[43] *Id.* ¶¶ 58, 68.

[44] *See Cooper v. City of Chester*, 810 F. Supp. 618, 623 (E.D. Pa. 1992) ("[A] § 1983 complaint must do more than recite the necessary elements of policy, practice or custom, causation, and deliberate indifference.").

The Complaint must make specific allegations of unconstitutional conduct rather than vague and conclusory allegations.[45] Moreover, to the extent that Plaintiffs specifically allege that they were arrested, searched, detained, and maliciously prosecuted without probable cause, "[a] policy cannot ordinarily be inferred from a single instance of illegality such as a first arrest without probable cause."[46] Thus, without identifying any previous patterns of such alleged illegality, it cannot be said that Plaintiffs have sufficiently pled the City's deliberate indifference for purposes of municipal liability.[47]

### B. State Tort Law Claims

Plaintiffs also have brought Pennsylvania tort law claims against all Defendants for "negligence, false arrest/false imprisonment, malicious prosecution, fraud, defamation, slander, negligent infliction of emotional distress, and outrageous conduct causing emotional distress."[48] The Court will examine those claims as they relate to the City and Police Officers, as well as Restaurant Defendants.

#### 1. The City and Police Officers

In conclusory fashion, the City and Police Officers simply argue that "Plaintiffs plead no facts giving rise to the vast majority of these claims and offer no explanation as to how any conduct by [them] could give rise to such claims."[49] The City and Police Officers, however, fail to provide any supportive legal authority as to these state law claims and why they should be

---

[45] *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir. 1986).

[46] *Losch*, 736 F.2d at 911 (citations omitted).

[47] *Cf. Harris v. City of Phila.*, 171 F. Supp. 3d 395, 401–02 (E.D. Pa. 2016) (holding that because plaintiff's claims of excessive force were supported in the complaint by several other specific incidents where officers from the City of Philadelphia used excessive force, and by a recent DOJ report stating deficiencies in training programs and policies with the use of weapons at issue, such allegations and findings created "a plausible claim for municipal liability under § 1983 pertaining to the training of its police officers").

[48] Compl. [Doc. No. 1] ¶¶ 61, 71.

[49] City and Police Officers' Mot. to Dismiss [Doc. No. 14] at 7 n.3.

11

dismissed.[50]  As the City and Police Officers are the ones who bear the burden of showing that no claim has been properly presented at this stage,[51] the Court will not independently parse through the legal merits of each and every state law claim on their behalf, particularly where they concede that some of the federal and state claims, at least, may indeed be plausible.  Thus, their motion to dismiss the state law claims against them will be denied at this time.

### 2. Good Luck Chinese Restaurant, Ling Lin, and Zhao Zhou

#### a.  Supplemental Jurisdiction

Restaurant Defendants all move to dismiss the state tort law claims based on a lack of supplemental jurisdiction, arguing that there are no federal claims asserted against them and that the state law claims are not part of the same case or controversy pursuant to 28 U.S.C. § 1367.[52]  Under the circumstances of this case, the Court finds that it does retain subject matter jurisdiction to adjudicate Plaintiffs' state tort law claims against Restaurant Defendants.

It has been well established that when a federal court has subject matter jurisdiction over a federal claim, it may also exercise jurisdiction over a related state claim over which the court has no independent basis of subject matter jurisdiction.[53]  This includes "claims that involve the joinder or intervention of additional parties," the doctrine of which is referred to as "pendent-party jurisdiction."[54]  A court considering whether to exercise pendent-party jurisdiction should

---

[50] For example, the City and Police Officers fail to provide any briefing on whether any of the state tort law claims against them may be barred by the express provisions of the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. §§ 8541, *et seq.*

[51] *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

[52] Restaurant Defs.' Mot. to Dismiss [Doc. No. 15] at 5-6.

[53] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

[54] *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 784 (3d Cir. 1995).  Before the passage of § 1367, the Supreme Court had previously disallowed pendent-party jurisdiction in *Finley v. United States*, 490 U.S. 545 (1989). *See* Richard H. Fallon, Jr., John F. Manning, Daniel J. Meltzer & David L. Shapiro, *Hart and Wechsler's The Federal Courts and The Federal System* 867 (7th ed. 2015) (noting that pendent-party jurisdiction occurs when "a

focus its inquiry on whether the pendent party's claims "are so related to claims in the action within the original jurisdiction that they form part of the same case or controversy."[55] Establishing the "same case or controversy" requires that the pendent claims "derive from a common nucleus of operative fact . . . such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding."[56] This discretionary exercise is grounded in notions of judicial economy, convenience and fairness to litigants.[57] Whether the two claims arise out of a "common nucleus of operative facts" is case-specific.[58]

As previously noted, the Court has federal question jurisdiction over this case because Plaintiffs have at least properly pled claims of unlawful arrest, unlawful search, and malicious prosecution against Police Officers for the deprivation of their constitutional rights. Although Restaurant Defendants argue that the state claims are unrelated as they simply regard issues over the freshness of the fruit salad,[59] this view is myopic. The state tort law claims against Restaurant Defendants are related to the eventual search, arrest, detention, and prosecution of Plaintiffs, as they allege such actions against them were largely based on the fabrication of facts during the investigation period. Thus, the Court may exercise supplemental jurisdiction over the state law claims as arising from a common nucleus of operative facts at this stage.

---

plaintiff with a federal claim against one defendant appends a state law claim, arising from a common nucleus of facts, against *another defendant*, who could not otherwise be sued in a federal court").

[55] 28 U.S.C. § 1367(a).

[56] *Gibbs*, 383 U.S. at 725.

[57] *Id.* at 726.

[58] *Nanavati v. Burdette Tomlin Mem. Hosp.*, 857 F.2d 96, 105 (3d Cir. 1988). The court may decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

[59] Restaurant Defs.' Mot. to Dismiss [Doc. No. 15] at 5.

**b. Failure to State a Claim**

Additionally, Restaurant Defendants argue that Plaintiffs have failed to state any Pennsylvania tort law claim against them due to a lack of factual allegations of wrongdoing against them.[60] The Court agrees only with respect to Defendant Zhou Zhao, but not as to Ling Lin or Good Luck Chinese Restaurant.

As Zhou Zhao correctly asserts, there are almost no factual allegations against him in the Complaint. Plaintiffs allege that he was present during the incident near Plaintiffs' home, and that he allegedly approached Plaintiff McCall.[61] However, he was pushed away by Plaintiff Nixon.[62] Although Zhao allegedly appeared at the Philadelphia Police Department on October 25, 2016 and was interviewed by Officer Park about the September 3 incident, it was Lin who told Officer Park that Nixon punched, rather than pushed, Zhao, and that McCall's wife pointed a shotgun at Lin during the disagreement.[63] With such limited factual allegations of Zhao's actions, Plaintiffs have failed to state a viable claim against Zhao for "negligence, false arrest/false imprisonment, malicious prosecution, fraud, defamation, slander, negligent infliction of emotional distress, and outrageous conduct causing emotional distress."[64] Thus, Zhao Zhou's motion will be granted, and the state tort law claims against him will be dismissed without prejudice.

On the other hand, Plaintiffs have alleged ample factual allegations against Ling Lin and Good Luck Chinese Restaurant, which may be further parsed out during discovery. Lin not only

---

[60] *Id.* at 6-8.

[61] Compl. [Doc. No. 1] ¶ 27.

[62] *Id.* ¶ 28.

[63] *Id.* ¶¶ 33-35.

[64] *Id.* ¶¶ 61, 71.

allegedly threw money and a glass bottle at Plaintiff McCall and spit in McCall's wife's face, but also allegedly fabricated information to Officer Park regarding the September 3 incident, which eventually led to a search of Plaintiffs' home, their arrest and detention, and prosecution for numerous criminal charges, all of which were later withdrawn.[65] Furthermore, to the extent that the claims were brought against Good Luck Chinese Restaurant, an employer may be held vicariously liable in Pennsylvania for the negligent acts of an employee that caused injuries to third parties, provided that such acts were committed during the course of and within the scope of employment.[66] This rule may in certain circumstances apply to both intentional and negligent conduct.[67] Although it is unclear at this time whether the factual allegations against Lin occurred when she was acting within the scope of her employment, further discovery will aid in resolving these issues, which have not been fully addressed by parties.[68] Thus, the motion to dismiss will be granted as it relates to Zhou Zhao, and dismissed without prejudice as it relates to Ling Lin and Good Luck Chinese Restaurant.

### IV.    LEAVE TO AMEND

In civil rights cases generally, the Third Circuit has held that courts must allow amendment, unless doing so would be inequitable or futile.[69] The Court will therefore permit Plaintiff to file a curative amendment with respect to his federal municipal claims against the

---

[65] *Id.* ¶¶ 17, 19, 25, 34, 35.

[66] *Joseph M. v. Ne. Educ. Intermediate Unit 19*, 516 F. Supp. 2d 424, 445 (M.D. Pa. 2007); *Valles v. Albert Einstein Med. Ctr.*, 758 A.2d 1238, 1244 (Pa. Super. Ct. 2000).

[67] *Costa v. Roxborough Mem. Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998).

[68] Particularly because the alleged fabrication of information initially stemmed from a disagreement at Good Luck Chinese Restaurant, it is too early in the litigation for the Court to independently pick out which actions by Ling Lin were within or not within her scope of employment.

[69] *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

City, his excessive force claim against Police Officers, and his state tort law claims against Zhou Zhao, and those claims will be dismissed without prejudice.

## V. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss will be granted as to Plaintiffs' claims of excessive force against Police Officers, municipal liability against the City, and state tort law claims against Zhou Zhao, which will be dismissed without prejudice and with leave to amend. The motions will otherwise be denied without prejudice.

An appropriate order follows.